NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE DEPENDENCY AS TO S.D.

No. 1 CA-JV 26-0044

FILED 06-30-2026

Appeal from the Superior Court in Maricopa County
No. JD536597
The Honorable Suzanne E. Cohen, Judge

**AFFIRMED**

COUNSEL

Law Office of H. Clark Jones, LLC, Mesa
By H. Clark Jones
*Counsel for Appellant Mother*

Arizona Attorney General's Office, Phoenix
By Yu-Shan "Sunny" Kuo
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Andrew J. Becke and Judge Kent E. Cattani joined.

**T H U M M A**, Judge:

**¶1**        Mary Duffeck (Mother) appeals the superior court's order adjudicating her daughter S.D. dependent on the grounds of neglect.[1] Because Mother has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Mother is the biological parent of S.D., born in 2011. In November 2025, DCS filed a dependency petition, alleging Mother's home was "unfit by reason of abuse, neglect, cruelty or depravity" and she was "unwilling or unable to provide proper and effective parental care and control and neglected to provide a safe and stable home environment and/or proper supervision." DCS noted multiple reports of both physical and sexual abuse of S.D. by Mother's boyfriend.[2]

**¶3**        At the March 2026 dependency adjudication, Mother and the ongoing case manager testified. The court found by a preponderance of the evidence that Mother neglected S.D.'s "well-being and has failed to protect the child from potential sexual abuse, specifically the statements made by mother's boyfriend that are sexual in nature and considered grooming." The court found S.D. dependent as to Mother and adopted a family reunification case plan. This court has jurisdiction over Mother's timely appeal from the dependency finding pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 8-235(A), 12-120.21(A) and -2101(A) and Ariz. R.P. Juv. Ct. 601-03 (2026).[3]

## DISCUSSION

**¶4**        On appeal, "Mother does not challenge the dependency finding at large. Rather, Mother challenges only the finding of neglect." This court reviews the evidence in the light most favorable to affirming a dependency order, which will be affirmed unless no reasonable evidence

---

[1] The caption has been amended to safeguard the child's identity pursuant to Administrative Order 2013-0001.

[2] Although the petition also alleged Mother "neglected to provide for [S.D.'s] basic needs," the court found DCS failed to prove that allegation.

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

supports it. *See Oscar F. v. Dep't of Child Safety*, 235 Ariz. 266, 267 ¶ 6 (App. 2014) (citing cases). This court will not reweigh evidence on appeal, recognizing the superior court as the trier of fact "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Id.* at 269 ¶ 13 (citation omitted).

**¶5**         A child is dependent if he or she is "[i]n need of proper and effective parental care and control and . . . has no parent . . . willing to exercise or capable of exercising such care and control," or if he or she has a "home [that] is unfit by reason of . . . neglect . . . by a parent." A.R.S. § 8-201(15)(a)(i), (iii). "Neglect" includes "[t]he inability or unwillingness of a parent . . . to provide th[e] child with supervision . . . or medical care if that inability or unwillingness causes substantial risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a). These requirements must be considered in the context of the "discrete and special needs of the particular child." *See Joelle M. v. Dep't of Child Safety*, 245 Ariz. 525, 527 ¶ 12 (App. 2018) (citation omitted). "[T]he juvenile court must consider the circumstances as they exist at the time of the dependency adjudication." *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 48 ¶ 1 (App. 2016). The circumstances that put the child at risk for abuse or neglect "need not be continuous or actively occurring at the time of the adjudication hearing to support a finding of dependency;" instead, "the substantiated and unresolved threat is sufficient." *Id.* at 51 ¶ 16 (citation omitted).

**¶6**         Mother argues a neglect finding "cannot be predicated on 'potential abuse'" as S.D.'s "speculative fear of potential, future abuse does not rise to the level of a demonstrable 'unreasonable risk of harm.'" Mother points to her testimony where she "denied having had knowledge of S.D.'s specific allegations of grooming" or the "inappropriate conversations of a sexual nature" before DCS involvement. Mother argues that, "if the record cannot demonstrate that Mother was aware of inappropriate communications, Mother cannot be said to have neglected to take action to curtail those communications or prevent *potential* harm in the future."

**¶7**         As applied, sufficient trial evidence supports the court's finding that S.D. was dependent as to Mother based on neglect. As early as January 2023, DCS received a report that Mother's boyfriend "verbally abuse[d]" S.D. daily. The report noted S.D.'s prior history of sexual abuse from a family member and that Mother was "aware" of S.D.'s "trauma." The report further mentioned attempts to work with Mother to help S.D., but Mother had been non-compliant "despite knowing" of self-harm by S.D. DCS' attempt to further investigate was closed when Mother would

not engage. In March 2025, DCS received a report that Mother's boyfriend "hit, punched and used a belt" on S.D.

¶8            In August 2025, S.D. experienced medical issues and Mother's boyfriend took her to the doctor. During this time, Mother's boyfriend allegedly spoke about sexually inappropriate things with S.D. Mother, however, "didn't want to listen." Mother then left for California for work, leaving S.D. with Mother's boyfriend. When the issue continued to surface, Mother attempted to talk to S.D. and Mother's boyfriend together. Mother's boyfriend allegedly got upset and Mother told S.D. "she was lying." When S.D. then locked herself in a bathroom, Mother's boyfriend broke down the bathroom door. Police were called and S.D. was taken into care and provided behavioral health treatment.

¶9            In October 2025, Mother took S.D. for behavioral health treatment given "suicidal ideations." S.D. was eventually discharged because Mother wanted different services than were being recommended. S.D. was soon taken to Banner Behavioral Health after she ran away from Mother's home. There, counsellors learned of concerns that S.D. "felt like she was being groomed by" Mother's boyfriend. Mother's contact with Banner "was inconsistent," delaying discharge until about two weeks later.

¶10           The day after S.D. was discharged from Banner, she was admitted into the prior behavioral health entity given concerns about suicidal threats. There, counsellors learned that Mother was leaving for California, and S.D. did not want to be left alone with Mother's boyfriend. Mother's absence and concerns about S.D. being placed with Mother's boyfriend then resulted in S.D. being placed with a maternal aunt.

¶11           DCS had difficulty maintaining contact with Mother. In November 2025, DCS received a hotline report that S.D. disclosed allegations of physical abuse from Mother's boyfriend, also involving Mother. DCS removed S.D. from Mother's care and filed this dependency petition. Based on these circumstances shown by the trial evidence, including conduct Mother knew of tracing back for at least two years, reasonable evidence supports the finding that S.D. was dependent as to Mother based on neglect.

¶12           Although the dependency inquiry assesses a parent's present ability to parent, the parent's past conduct related to adverse circumstances that remain unresolved is relevant to the dependency finding. *See Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 299 ¶ 28 (App. 2020). Here, there were numerous instances of conduct of which Mother had knowledge.

Mother testified that she was only aware of S.D.'s safety concerns with Mother's boyfriend "[o]nly in the[] reports that [she] read, from evidence that's been submitted after the fact." When Mother was asked if she was aware that S.D. was concerned that she would not protect her from Mother's boyfriend, Mother responded, "I mean, that's her own poor attitude about it. That's not accurate." The ongoing case manager also testified that Mother was not cooperating with DCS and did not show a willingness to engage. On this record, the superior court properly could conclude that the circumstances prompting the dependency remain unresolved.

¶13 Mother also argues the record "does not contain reasonable evidence to support the court's finding that inappropriate statements *were* indeed made" by Mother's boyfriend to S.D., arguing S.D.'s "claims lacked corroborating evidence or support." But the court explicitly found S.D.'s statements were credible. Mother, in essence, argues that the evidence should be reweighed on appeal, something this court will not do. *Oscar F.*, 235 Ariz. at 269 ¶ 13 (citing cases). Because reasonable evidence supports the neglect finding, the order is affirmed.[4]

## CONCLUSION

¶14 The dependency order is affirmed.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:            JR

---

[4] Mother argues the record on appeal should not include recordings of forensic interviews, Exhibits 14-17, suggesting the court did not view them before issuing its ruling. At trial, the court was told that Exhibits 14 and 15 were duplicates, and that Exhibits 16 and 17 were duplicates; recordings of the same interview at different camera angles. The court stated it would "admit them, but I'm only going to watch the two interviews." To the extent Mother argues the superior court did not rely on the mentioned Exhibits, she has provided no evidence to support such an argument.